IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-128

No. 251A21

Filed 16 December 2022

IN THE MATTER OF: K.P.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 278 N.C. App. 42, 2021-NCCOA-268, vacating an order entered on 21 July 2020 by Judge Christopher B. McLendon in District Court, Hyde County, and remanding for further findings. Heard in the Supreme Court on 14 February 2022.

*Rodman, Holscher, Peck & Edwards, P.A., by Jacinta D. Jones, for petitioner-appellant Hyde County Department of Social Services.*

*Keith Karlsson for respondent-appellee Guardian ad Litem.*

*J. Thomas Diepenbrock for respondent-appellee mother.*

MORGAN, Justice.

¶ 1    Petitioner appeals from a decision in the Court of Appeals which vacated a trial court order eliminating reunification as a permanent plan and ceasing further review hearings in a neglect and dependency case concerning the son of respondent-mother. The trial court entered the order at issue after it found that an alternate permanent plan of custody with a court-approved caretaker had been achieved and after the trial court had received evidence tending to show that the court-approved caretakers

understood the legal significance of the juvenile's placement in their home. Upon appeal from respondent-mother, the Court of Appeals vacated the trial court's permanency planning order and remanded the case for further findings of fact. *In re K.P.*, 278 N.C. App. 42, 2021-NCCOA-268.

Because the trial court correctly found that a permanent plan had been achieved in this case as an alternative to reunification, and because the trial court properly verified that the juvenile's court-approved caretakers understood the legal significance of the juvenile's placement with them and that they possessed adequate resources to care appropriately for the juvenile, we reverse the portions of the Court of Appeals opinion that found error in these portions of the trial court's order. Furthermore, we leave undisturbed the portion of the Court of Appeals opinion remanding the matter to the trial court to make the findings which are required by N.C.G.S. § 7B-906.1(n).

## I. Factual and Procedural Background

On 22 March 2018, the Hyde County Department of Social Services (DSS) filed a juvenile petition which alleged that a three-month-old child named Kenneth[1] was a neglected and dependent juvenile. The supporting documentation alleged, as the trial court later found to be true, that Kenneth's putative father, George Phillips, had

---

[1] Pseudonyms are used for the juvenile and his family members to protect the identity of the juvenile in conformance with the regular practice of this Court.

returned home early on 17 March 2018 to find his wife—respondent-mother—in bed with a man named Don Keller. A domestic violence incident ensued in which Phillips and Keller struggled over a knife in the presence of Kenneth and Kenneth's siblings[2] who all resided in the home with respondent-mother and her husband. As a result of the fracas, Keller was hospitalized and Phillips was arrested and charged with assault with a deadly weapon in the presence of a minor, along with other serious charges. Respondent-mother was charged with simple assault. Respondent-mother made arrangements for Kenneth to reside with his maternal aunt prior to respondent-mother's arrest. Kenneth stayed with his maternal aunt from 22 March 2018 until 22 May 2018, when the trial court determined that Kenneth would reside with Phillips's father, George Phillips, Sr., and his wife Mary Phillips, because the couple offered "a safe and stable living environment for the juvenile[ ]."

¶ 4    In light of the events which precipitated the removal of Kenneth and his siblings from the household in which respondent-mother and her husband resided, Phillips questioned Kenneth's paternity, prompting the trial court at a nonsecure custody hearing on 8 August 2018 to order respondent-mother's husband to submit to paternity testing. Kenneth remained in the custody of Phillips, Sr. and Mrs. Phillips. On 17 October 2018, the results of the paternity test revealed that Phillips was not the biological father of Kenneth. The trial court ordered Keller to submit to

---

[2] There are no matters regarding Kenneth's siblings which are at issue in this case.

paternity testing after respondent-mother identified him as a potential father of Kenneth. In January 2019, Keller was determined to be Kenneth's biological father.

¶ 5    Having discovered the lack of a biological relationship between Phillips and the juvenile Kenneth, the trial court held its first adjudication and disposition hearing concerning the underlying neglect and dependency petitions on 10 December 2018. At this hearing, the trial court adjudicated Kenneth to be a neglected juvenile because Kenneth "would reside in an injurious environment if returned to either [parent's] home[ ]." The trial court decreed that respondent-mother needed to address the issues which rendered her residence unsafe for Kenneth by participating in domestic violence counseling, participating in anger management classes, maintaining stable housing, and obtaining a valid driver's license with accompanying safe transportation. The trial court also noted its concerns about substance abuse that may have occurred in respondent-mother's home. Consistent with its earlier determination that Phillips, Sr. and Mrs. Phillips would provide a "safe and stable living environment" for the child, the trial court found that the home of Kenneth's grandparents by marriage[3] constituted "the least restrictive, most family like placement available" and that the "child's physical and mental health are good" because of the couple's provision of adequate care for Kenneth. These findings were

---

[3] "Grandparents" by virtue of the legal status of the child Kenneth's mother—respondent-mother here—and Phillips as wife and husband.

consistent with earlier findings made by the trial court concerning the appropriateness of Kenneth's placement in the Phillips, Sr. home. These earlier findings had been entered in each of the trial court's orders continuing Kenneth's nonsecure custody with DSS which had been filed since the juvenile's placement in the Phillips, Sr. home. The trial court opted to maintain Kenneth in the custody of Phillips, Sr. and Mrs. Phillips despite the discovery of the lack of the presumed father-son relationship between Phillips and the juvenile Kenneth. Reunification with respondent-mother was set as the permanent plan.

¶ 6        At the permanency planning review hearing conducted on 25 March 2019, the trial court continued Kenneth's nonsecure custody in the home of Phillips, Sr. and Mrs. Phillips, while adding a concurrent permanent plan of custody with a relative to the existing plan of reunification with respondent-mother. Respondent-mother and Phillips, who had separated for a period of time, resumed their marital relationship in April 2019. In June 2019, Phillips, Sr. and Mrs. Phillips were serving as the placement for Kenneth and all three of his siblings. Mrs. Phillips reported that the household was experiencing behavioral issues with the children and financial hardship and stated that it would be preferable for two of the four children to be placed in another home. In response, the trial court ordered that Kenneth and one of his siblings be moved to the home of his "paternal step great grandparents" on 17 July 2019. Given respondent-mother's revived relationship with Phillips, Jr. and the

couple's acquisition of appropriate housing, the trial court ordered the commencement of a trial home placement with Kenneth by 20 September 2019. However, a DSS investigation in October 2019 revealed that both respondent-mother and Phillips, Jr. had continued to commit acts of domestic violence upon one another in the presence of Kenneth and the other children during the trial home placement. The trial court terminated the trial home placement, removed Kenneth from the home once again, and placed Kenneth in the care of his maternal aunt in a nearby county. Kenneth was returned to the home of Phillips, Sr. and Mrs. Phillips after the child's temporary stay with his maternal aunt.

¶ 7 At a permanency planning review hearing on 13 January 2020, the trial court found that, except for having completed anger management and parenting classes as directed, respondent-mother had failed to successfully address any of the concerns which had resulted in Kenneth's ongoing removal from the home. Respondent-mother continued to be both the victim and perpetrator of domestic violence and had vacated the home she had temporarily shared with Phillips during their brief marital reconciliation in favor of moving to a two-bedroom apartment with her mother in Virginia. Respondent-mother did not have stable employment, had yet to obtain a valid driver's license, and had refused to submit to drug screens since the termination of the trial home placement. Despite her participation in services offered by DSS, respondent-mother had failed to accomplish the directives which were required to

reunite with Kenneth and therefore had "acted inconsistent with the juvenile's health and safety." The trial court maintained the goal of reunification but revised the permanent plan options to include "custody to a court-approved caretaker" in addition to the existing permanent plans of reunification and custody to a relative.

¶ 8     At a 3 June 2020 permanency planning review hearing, the trial court received testimony that respondent-mother had obtained a driver's license without an accompanying mode of transportation and that she had ended her active involvement with Phillips. Otherwise, respondent-mother persisted in her failure to make any progress in obtaining appropriate housing, obtaining a verifiable or consistent source of income, or participating in domestic violence counseling after such discord reoccurred during the trial home placement. Respondent-mother expressed her view that further domestic violence counseling would be "irrelevant." Respondent-mother had only submitted to one out of the seven drug screens scheduled for her by DSS since December of 2019.

¶ 9     Meanwhile, Kenneth continued to thrive in his placement with Phillips, Sr. and Mrs. Phillips over the succeeding months, and the couple indicated a desire to serve as the child's permanent custodians. These grandparents by marriage provided appropriate care for Kenneth while maintaining a good working relationship with both respondent-mother and respondent-father Keller. In her testimony at the permanency planning review hearing held on 3 June 2020, respondent-mother

acknowledged that the paternal step-grandmother by marriage Mrs. Phillips had done an exemplary job in taking care of Kenneth. DSS social worker Alisha Holloway likewise testified that Kenneth was "doing amazing" in the Phillips, Sr. home, adding that Phillips, Sr. and Mrs. Phillips had expressed a desire to accept legal custody of the child. In related fashion, some of the testimony which Phillips, Sr. offered at the hearing was as follows:

> [DSS Attorney]. And do you recall having conversations with the Department regarding taking custody of [Kenneth]?
>
> [George Phillips, Sr.]. Yes, ma'am.
>
> Q. And are you and your wife willing to do that at this time?
>
> A. Yes, ma'am.
>
> Q. And are you and your wife willing to provide permanence for [Kenneth] through a custody order?
>
> A. Yes, ma'am.
>
> Q. Now, how, if at all, are you employed, Mr. [Phillips]?
>
> A. I'm employed with Cherry Farm and Seed.
>
> . . . .
>
> Q. And if I may ask, Mr. [Phillips], what is an estimate of your annual salary?
>
> A. It depends year to year. I think last year was fifty-six, I think, something like that.
>
> Q. And since having [Kenneth] in your home, have

you and your wife experienced any difficulty in financially caring for him?

A. No.

Q. Do you anticipate having any financial difficulty in continued care of [Kenneth]?

A. No; no, ma'am.

On 21 July 2020, the trial court entered an order pursuant to the 3 June 2020 permanency planning review hearing in which the trial court found that respondent-mother's "lack of progress and the history of the juvenile's case" rendered the permanent plan of custody to a court-approved caretaker as the most appropriate plan for Kenneth. The trial court reasoned that Phillips, Sr.'s and Mrs. Phillips's "commitment to serving as a permanent placement for [Kenneth]," combined with the couple's positive performance as temporary caretakers for the child, supported the conclusion that it was appropriate that legal and physical custody of the juvenile Kenneth be granted to them on a permanent basis. The trial court noted that the Phillips, Sr. household possessed the ability to financially support Kenneth without substantial assistance from outside sources, and that respondent-father Keller had consented to the joint recommendation of DSS and Kenneth's guardian ad litem that the paternal grandfather and the paternal step-grandmother be granted permanent custody. The trial court thereupon awarded legal and physical custody to Phillips, Sr. and Mrs. Phillips after concluding that Kenneth's best interests would be served by establishing such a custody arrangement. Because custody to a court-approved

caretaker was one of three enumerated primary permanent plans which were identified and pursued in the present case, and since custody was being granted to court-approved caretakers with a demonstrated ability and willingness to provide a safe and stable home for Kenneth, the trial court concluded that a primary permanent plan had been achieved through the entry of the 21 July 2020 order. Because a primary permanent plan was achieved through the award of legal and physical custody to Phillips, Sr. and Mrs. Phillips, further efforts towards the achievement of the other two primary permanent plans of reunification and custody to a relative became unnecessary. As a result, the 21 July 2020 trial court order effectively eliminated reunification as a permanent plan.

Respondent-mother appealed the 21 July 2020 order to the Court of Appeals, asserting that (1) the trial court had eliminated reunification as a permanent plan without making findings that respondent-mother claims were required by N.C.G.S. §§ 7B-906.2(b) and (d), and 7B-906.1(d)(3); (2) the trial court had failed to verify that the court-approved caretakers Phillips, Sr. and Mrs. Phillips understood the legal significance of the juvenile Kenneth's placement with them as required by N.C.G.S. § 7B-906.1(j) before being awarded custody of the child; and (3) the trial court failed to make findings required by N.C.G.S. § 7B-906.1(n) before ceasing further permanency planning review hearings.

In addressing the first issue, the Court of Appeals majority agreed with

respondent-mother that the trial court erred by eliminating reunification as a primary or secondary permanent plan without first making required findings of fact. The majority explained that the trial court's conclusion following the 3 June 2020 final permanency planning review hearing that the "primary permanent plan for the juvenile . . . ha[d] been achieved through the entry of th[e] [o]rder" was directly refuted by the trial court's findings of fact in the order because the trial court had previously established custody to a relative as the "primary permanent plan," while custody to a court-approved caretaker had been designated by the trial court as one of the "concurrent permanent plans." *In re K.P.*, 2021-NCCOA-268, ¶ 20. According to the Court of Appeals majority, the primary permanent plan of custody to a relative could not have been achieved here by placing Kenneth with Phillips, Sr. and Mrs. Phillips because Phillips was not Kenneth's biological father. Therefore Phillips, Sr. and Mrs. Phillips were non-relatives instead of relatives. *Id.* As a result, the Court of Appeals majority opined that, as previously "made clear" by that court, "when a district court eliminates reunification as either a primary or secondary permanent plan, it must make findings pursuant to both N.C.[G.S.] §§ 7B-906.2(b) and (d)." *Id.* ¶ 18. The lower appellate court majority therefore determined that the trial court's failure to make sufficient findings pursuant to N.C.G.S. § 7B-906.2(d) regarding respondent-mother's "degree of success or failure toward reunification," and its failure to make findings pursuant to N.C.G.S. §§ 7B-906.2(b) and 7B-906.1(d)(3) that

"reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety" and whether reunification efforts would be inconsistent with the juvenile's "need for a safe, permanent home within a reasonable period of time," in combination with the trial court's erroneous declaration that the primary permanent plan had been achieved, required that the trial court's order ceasing reunification efforts be vacated and the case be remanded to the trial court for further proceedings. *Id.* ¶ 21.

¶ 13        The Court of Appeals majority also agreed with respondent-mother regarding her contention that the trial court erred in failing to verify that Phillips, Sr. and Mrs. Phillips understood the legal significance of taking permanent custody of Kenneth. According to the lower appellate court, the evidence that (1) Phillips, Sr. and Mrs. Phillips did an excellent job taking care of Kenneth as the juvenile's court-appointed caretakers; (2) the couple were willing to serve as a permanent placement for the child; and (3) the household could financially support Kenneth without substantial outside assistance was insufficient to "show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources and understood the legal significance of custody or guardianship." *Id.* ¶ 23 (quoting *In re J.D.M.-J.*, 260 N.C. App. 56, 65 (2018)). The majority vacated the trial court's order on this ground also. *Id.* ¶ 24.

¶ 14        The Court of Appeals dissent disagreed with the majority on these issues. As

for the trial court's elimination of reunification as a permanent plan, the dissenting judge noted that N.C.G.S. § 7B-906.2(b) allowed for the cessation of reunification efforts if the trial court found either that reunification would be inconsistent with the health and safety of the juvenile *or* that any permanent plan had been achieved, regardless of whether the fulfilled permanent plan was labeled "primary" or otherwise. *Id.* ¶ 34 (Jackson, J. concurring in part and dissenting in part). Because a permanent plan had been achieved through the entry of the trial court's June 2020 order, the dissent further reasoned that the trial court was not required to find that reunification would be inconsistent with the health or safety of the juvenile Kenneth. *Id.* ¶¶ 32, 38. In addressing the position of the Court of Appeals majority that the trial court erred in failing to make the required statutory findings under N.C.G.S. §§ 7B-906.2(b), 7B-906.2(d), and 7B-906.1(d)(3) regarding the status of reunification, the dissent identified and evaluated a number of the trial court's findings which the dissent considered to be sufficient to satisfy the findings mandated by the cited statutes. In the dissent's view, the trial court addressed all of the necessary considerations and entered all of the necessary findings to properly eliminate reunification as a permanent plan. *Id.* ¶ 41. Secondly, in responding to the Court of Appeals majority decision that the trial court failed to verify that Phillips, Sr. and Mrs. Phillips understood the legal significance of Kenneth's permanent placement in their home, the dissent opined that pertinent appellate case law holds that N.C.G.S.

§ 7B-906.1(j) is satisfied in this regard if the trial court received and considered evidence including, "*inter alia*, testimony from the potential guardian of a desire to take guardianship of the child, . . . and testimony from a social worker that the potential guardian was willing to assume legal guardianship." *Id.* ¶ 44 (quoting *In re J.D.M.-J.*, 260 N.C. App. at 68). The dissenting opinion went on to cite transcript passages and to summarize other testimony from the 3 June 2020 permanency planning review hearing, along with the trial court's resulting determinations, and expressed the belief that there was compliance at the trial court level with N.C.G.S. § 7B-906.1(j). *Id.* ¶¶ 47–48. As for whether the trial court verified that the couple had adequate resources to care for Kenneth, the dissent observed that the statute itself establishes that "[t]he fact that the prospective custodian or guardian has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources." *Id.* ¶ 49 (quoting N.C.G.S. § 7B-906.1(j) (2019)). The dissenting judge recognized that Kenneth had resided in the court-approved caretakers' household of Phillips, Sr. and Mrs. Phillips for seven consecutive months, and that Phillips, Sr. offered uncontradicted testimony regarding the household's ability to financially support Kenneth without any difficulty and that the couple had been financially caring for the child in this manner. *Id.* ¶¶ 50, 51.

With regard to the third issue, the trial court's lack of compliance with N.C.G.S. § 7B-906.1(n), DSS and Kenneth's guardian ad litem conceded before the

Court of Appeals that the trial court failed to make the findings which were required to cease further review or permanency planning hearings under that provision. Given the concession made by DSS and the guardian ad litem, the Court of Appeals dissent agreed with the majority that the trial court failed to make the required findings under N.C.G.S. § 7B-906.1(n) upon the trial court's determination that further review hearings would end in light of the trial court's 21 July 2020 order. *Id*. ¶¶ 27 (majority opinion), 29 (Jackson, J., concurring in part and dissenting in part). Otherwise, the dissent disagreed with the majority's resolution of this case.

¶ 16    Petitioner DSS timely filed notice of appeal based on the divided decision of the Court of Appeals.

## II.    Analysis

¶ 17    DSS and the guardian ad litem for the juvenile Kenneth challenge the determination of the Court of Appeals majority that the trial court's 21 July 2020 order failed to contain (1) the findings necessary to eliminate reunification as a permanent plan, and (2) the verifications required to award custody of Kenneth to persons other than the child's parents. As a fundamental premise, we stated in *In re L.R.L.B.*, 377 N.C. 311, 2021-NCSC-49, that:

> Our review of a permanency planning order 'is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law. The trial court's findings of fact are conclusive on appeal if supported by any competent evidence.' The trial court's dispositional

choices—including the decision to eliminate reunification from the permanent plan—are reviewed only for abuse of discretion, as those decisions are based upon the trial court's assessment of the child's best interests.

2021-NCSC-49, ¶ 11 (extraneity omitted).[4] "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107 (2015) (extraneity omitted).

## A. Requirements for the Elimination of Reunification as a Permanent Plan

¶ 18    N.C.G.S. § 7B-906.2(a) establishes that at any permanency planning hearing which is conducted pursuant to N.C.G.S. § 7B-906.1, the trial court shall adopt one or more of the permanent plans which are listed in N.C.G.S. § 7B-906.2(a) which the trial court finds to be in the juvenile's best interests. "Reunification" and "custody to a relative or other suitable person" are included as eligible permanent plans in the statutory provision. N.C.G.S. § 7B-906.2(a) (2021). N.C.G.S. § 7B-906.2(b), in its entirety, states:

> At any permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan. Reunification shall be a primary or secondary plan unless the court made written findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), the permanent plan is or has been achieved in

---

[4] "At a review or permanency-planning hearing, '[t]he [trial] court may consider any evidence, including hearsay evidence . . . that the [trial] court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.'" *In re C.C.G.*, 380 N.C. 23, 2022-NCSC-3, ¶ 28 (quoting N.C.G.S. § 7B-906.1(c)).

accordance with subsection (a1) of this section, or the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety. The finding that reunification efforts clearly would be unsuccessful or inconsistent with the juvenile's health or safety may be made at any permanency planning hearing, and if made, shall eliminate reunification as a plan. Unless permanence has been achieved, the court shall order the county department of social services to make efforts toward finalizing the primary and secondary permanent plans and may specify efforts that are reasonable to timely achieve permanence for the juvenile.

N.C.G.S. § 7B-906.2(b) (2021). "It is well settled that where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Union Carbide Corp. v. Offerman*, 351 N.C. 310, 314 (2000) (extraneity omitted). " 'Where a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (*e.g.* "or"), the application of the statute is not limited to cases falling within both clauses, but will apply to cases falling within either of them." *Spruill v. Lake Phelps Vol. Fire Dep't., Inc.*, 351 N.C. 318, 323 (2000) (quoting *Davis v. N.C. Granite Corp.*, 259 N.C. 672, 675 (1963)).

In a permanency planning order entered by the trial court on 20 December 2019 pursuant to a permanency planning review hearing held on 20 August 2019, the trial court stated that "[t]he permanent plan shall be reunification with a concurrent

plan of custody with a relative." After the permanency planning review hearing conducted on 13 January 2020, the trial court entered an order dated 27 March 2020 and filed on 3 April 2020 in which it found in Finding of Fact 25 that "[t]he respondent parents have acted inconsistent with the juvenile's health and safety" and decreed that "[t]he primary permanent plan for the juvenile shall be custody to a relative with concurrent permanent plans of custody to a court-approved caretaker and reunification." In a subsequent permanency planning order entered by the trial court on 21 July 2020 after it conducted a 3 June 2020 permanency planning review hearing in the matter, the trial court made Findings of Fact 25, 26, and 27 as follows:

> 25. The respondent parents have acted inconsistent with the juveniles' health and safety.
>
> 26. In accordance with G.S. 7B-906.2, the primary permanent plan is custody to a court-approved caretaker, and that plan is being achieved with the entry of this order.
>
> 27. In accordance with G.S. 7B-906.2, there is no further need for a concurrent plan as the primary plan of custody to a court-approved caretaker is achieved.

The trial court consequently determined in the same order that "[t]he primary permanent plan for the juvenile of custody to a court-approved caretaker has been achieved through the entry of this order."

¶ 20      The Court of Appeals majority erroneously decided in the opinion which it rendered here that the trial court's 21 July 2020 permanency planning order did not

make proper findings of fact based on competent evidence, pursuant to N.C.G.S. §§ 7B-906.1(d)(3) and 7B-906.2(b), to allow the trial court to remove reunification as a concurrent permanent plan and thereby implicitly to cease reunification efforts. *In re K.P.*, ¶ 19. Based on this faulty premise, the Court of Appeals went on to conclude that the trial court's 21 July 2020 order "fail[ed] to address the ultimate question of whether reunification would be unsuccessful or inconsistent with Kenneth's safety" by "ceas[ing] reunification efforts without making sufficient findings pertinent to N.C. Gen. Stat. § 7B-906.2(d) and the ultimate findings required by N.C. Gen. Stat. §§ 7B-906.2(b) and 7B-906.1(d)(3)." *Id.* ¶ 21. We agree with the Court of Appeals dissent regarding the proper assessment of the trial court's pertinent orders relating to the identification and prioritization of the permanent plans which were evaluated, the sufficiency of the trial court's findings to support its conclusions concerning the trial court's elections between and among the permanent plans, and the trial court's satisfaction of the mandatory determinations which the cited applicable statutes require. The trial court's findings, conclusions, and supporting rationale were properly reached and substantiated in light of the evidence adduced, and in light of the statutory law and appellate case law. This includes the determination made by the Court of Appeals majority that the trial court erred in the trial court's view of Phillips, Sr. and Mrs. Phillips as Kenneth's relatives for purposes of the fulfillment of the primary permanent plan of "custody to a relative" identified in the trial court's

order dated 27 March 2020 and filed on 3 April 2020, even though the same result was realized when the couple received legal and physical custody of Kenneth pursuant to the trial court's recognition of their status as "court-approved caretaker[s]" in the trial court's 21 July 2020 order which designated "custody to a court-approved caretaker" as the primary permanent plan for the juvenile Kenneth.

¶ 21    In the instant case, there is competent evidence in the record to support the trial court's findings of fact, and in turn there are sufficient findings of fact to support the conclusions of law, which undergird the trial court's determinations in the orders which it issued to eliminate reunification as a permanent plan. These findings, conclusions, and ultimate determinations reached by the trial court on the matter of the elimination of reunification as a permanent plan in this case satisfy the statutory requirements imposed upon a trial court under N.C.G.S. § 7B-906.1(d)(3) to make relevant written findings of fact as to whether efforts to reunite the juvenile Kenneth with either parent clearly would be inconsistent with the juvenile's health or safety and N.C.G.S. § 7B-906.2(b) to make written findings that reunification efforts clearly would be inconsistent with the juvenile's health or safety which therefore would eliminate reunification as a plan. Under the circumstances presented in this case, the trial court was not required to make further findings, conclusions, and ultimate determinations regarding the elimination of reunification. We do not discern any abuse by the trial court of its discretion to arrive at the findings, conclusions, and

ultimate determinations which the trial court reached, in light of the deference given to the trial court concerning its assessment of the child's best interests. Additionally, in light of standard rules of statutory construction, the use of the disjunctive term "or" in N.C.G.S. § 7B-906.2(b) demonstrates that the satisfaction of any one of the three delineated circumstances which are identified in the statute, even to the exclusion of the remaining two circumstances, relieves the trial court of any further obligation to maintain reunification as a permanent plan. Since the trial court properly determined in its 21 July 2020 order that the revised primary permanent plan of custody to a court-approved caretaker had been achieved, and the trial court had made written findings that reunification efforts clearly would be inconsistent with the juvenile's health or safety, then the trial court was empowered to properly eliminate reunification as a primary or secondary plan because the trial court satisfied all of these components as found in N.C.G.S. § 7B-906.2(b).

¶ 22     In light of all of these aspects, we reverse the Court of Appeals' determination that the trial court erred in ceasing reunification efforts and ultimately eliminating reunification as a primary or secondary permanent plan.

**B. Requirements for the Verification of Non-Parents to be Custodians**

¶ 23     N.C.G.S. § 7B-906.1(a) states, in pertinent part, that "[t]he court shall conduct a . . . permanency planning hearing within 90 days from the date of the initial dispositional hearing [and] permanency planning hearings shall be held at least every

six months thereafter." N.C.G.S. § 7B-906.1(a) (2021). Pursuant to the trial court's execution of a permanency planning hearing, N.C.G.S. § 7B-906.1(j) provides, in pertinent part:

> If the court determines that the juvenile shall be placed in the custody of an individual other than a parent . . . , the court shall verify that the person receiving custody . . . understands the legal significance of the placement . . . and will have adequate resources to care appropriately for the juvenile. The fact that the prospective custodian . . . has provided a stable placement for the juvenile for at least six consecutive months is evidence that the person has adequate resources.

N.C.G.S. § 7B-906.1(j). While this Court has never addressed the minimum evidentiary requirements which are sufficient to support a trial court's verification that a non-parent "understands the legal significance of the placement" of the juvenile in the non-parent's custody and that the non-parent "will have adequate resources to care appropriately for the juvenile," the Court of Appeals provided instructive guidance on the matter in the opinion which it rendered in *In re J.D.M.-J.*, where the lower appellate court opined:

> N.C. Gen. Stat. § 7B-906.1(j) does not require the trial court to make any specific findings in order to make the verification. However, we have made clear that the record must show the trial court received and considered reliable evidence that the guardian or custodian had adequate resources and understood the legal significance of custody or guardianship.

260 N.C. App. at 65 (extraneity omitted).

¶ 24        During the course of conducting permanency planning review hearings in this case, the trial court determined that the juvenile Kenneth should be placed in the custody of an individual other than a parent. The tribunal placed the child in the custody of Phillips, Sr. and his wife Mrs. Phillips. The Court of Appeals majority concluded that the trial court "failed to fulfill its statutory obligation to verify that Mr. Phillips, Sr. and Mrs. Phillips (non-parents and non-relatives) understood the legal significance of their appointment as Kenneth's custodians," *In re K.P.*, ¶ 22, or "that the couple had the adequate resources to care appropriately for the juvenile," *id.* ¶ 23. On this issue of verification, the Court of Appeals majority ultimately decided that "neither the record [as] a whole nor the district court's findings of fact support the conclusion that Kenneth's custodians understood the legal significance of the placement or that they would have the adequate resources to care appropriately for the juvenile." *Id.* ¶ 24. Conversely, the dissenting opinion of the Court of Appeals took the position on verification that "testimony from the social worker and Mr. Phillips Sr. demonstrates that the couple understood the legal significance of the appointment, and Kenneth's stable placement with Mr. Phillips Sr. and Mrs. Phillips for seven consecutive months demonstrates the couple had adequate resources to care for Kenneth." *Id.* ¶ 42 (Jackson, J., concurring in part and dissenting in part).

¶ 25        While the majority view and the dissenting view of the lower appellate court reach opposite outcomes on the issue of verification in the present case, both of them

quote these cited passages from the transcript as dispositive of their respective opinions, with a social worker having testified for DSS as follows:

> Q. And have [Mr. Phillips, Sr., and Mrs. Phillips] expressed a desire to accept legal custody of [Kenneth]?
>
> A. Yes, they have.

Phillips, Sr. offered the following testimony:

> Q. And do you recall having conversations with the Department regarding taking custody of [Kenneth]?
>
> A. Yes, ma'am.
>
> Q. And are you and your wife willing to do that at this time?
>
> A. Yes, ma'am.
>
> Q. And are you and your wife willing to provide permanence for [Kenneth] through a custody order?
>
> A. Yes, ma'am

In addition, the Court of Appeals dissent noted this permanency planning review hearing testimony from Phillips, Sr.:

> Q. And if I may ask, Mr. [Phillips, Sr.], what is an estimate of your annual salary?
>
> A. It depends year to year. I think last year was fifty-six, I think, something like that.
>
> Q. And since having [Kenneth] in your home, have you and your wife experienced any difficulty in financially caring for him?

A. No.

Q. Do you anticipate having any financial difficulty in continued care of [Kenneth]?

A. No; no, ma'am.

Q. And have you been caring for [Kenneth] without any substantial financial contributions from the parents?

A. No.

Q. No contributions?

A. No.

We agree with the Court of Appeals dissent on this matter of verification, conclude that the Court of Appeals majority erroneously decided this issue, and therefore reject the majority's conclusion regarding verification. Despite the lack of any specific findings which are expressly identified in N.C.G.S. § 7B-906.1(j) as being required to authorize a trial court to properly establish verification, we can determine from the record of the 3 June 2020 permanency planning review hearing that the trial court sufficiently verified that the court-approved caretakers Phillips, Sr. and Mrs. Phillips, in receiving legal and physical custody of the juvenile Kenneth, understood the legal significance of the placement and had adequate resources to care appropriately for the child. The combined testimony rendered by the DSS social worker and Phillips, Sr. amply support this determination. Similarly, the testimony given at the hearing by Phillips, Sr. with regard to the financial stability, resources,

independence, and comfort level of the court-approved caretakers, when considered along with the undisputed evidence which showed that the seven consecutive months of Kenneth's placement with Phillips, Sr. and Mrs. Phillips exceeded the span of six consecutive months of such placement that N.C.G.S. § 7B-906.1(j) expressly recognizes as evidence that the prospective custodian has adequate resources, satisfactorily showed that the couple have adequate resources to care appropriately for the juvenile.

¶ 27        Given these circumstances, we reverse the decision of the Court of Appeals that the trial court erred by failing to fulfill the trial court's statutory obligations established by N.C.G.S. § 7B-906.1(j) concerning verification.

### III.    Conclusion

¶ 28        Petitioner appeals to this Court from the decision of the Court of Appeals on the basis of a dissent. For the reasons stated noted in the dissenting opinion, we reverse the decision of that court as to the appealable issues of right, namely, the determinations by the Court of Appeals that the trial court erred (1) in ceasing reunification efforts and ultimately eliminating reunification as a primary or secondary plan, and (2) by failing to fulfill its statutory obligations under N.C.G.S. § 7B-906.1(j) concerning verification. The remaining issue addressed by the Court of Appeals, namely, that the trial court failed to comply with the requirement to make appropriate findings of fact pursuant to N.C.G.S. § 7B-906.1(n) before ordering the

cessation of further reviews in this case, is not properly before this Court and the decision by the Court of Appeals on that issue remains undisturbed. This case is remanded to the Court of Appeals for further remand to the District Court, Hyde County, for further proceedings not inconsistent with this opinion.

REVERSED IN PART AND REMANDED.