IN THE SUPREME COURT OF NORTH CAROLINA

No. 457A14

11 June 2015

IN THE MATTER OF:  T.L.H.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 765 S.E.2d 88 (2014), reversing an order entered on 4 February 2014 by Judge Tabatha Holliday in District Court, Guilford County, and remanding this case to the trial court for further proceedings.  Heard in the Supreme Court on 21 April 2015.

> *Mercedes O. Chut for petitioner-appellant Guilford County Department of Health and Human Services.*
>
> *Parker Poe Adams & Bernstein, LLP, by Sye T. Hickey, Appellate Counsel for appellant Guardian ad Litem, on behalf of the minor child.*
>
> *J. Lee Gilliam, Assistant Appellate Defender, for respondent-appellee mother.*

ERVIN, Justice.

The ultimate issue before us in this case is the extent to which a trial court must inquire into a parent's competence to determine whether it is necessary to appoint a guardian *ad litem* for that parent despite the absence of any request that such a hearing be held or that a parental guardian *ad litem* be appointed.  After considering this issue in light of the record developed in this case, the Court of Appeals held that the trial court abused its discretion by failing to inquire into the issue of whether respondent was entitled to the appointment of a parental guardian

*ad litem* given that the information available to the trial court raised a substantial question concerning her competence. We reverse the decision of the Court of Appeals.

Respondent delivered her son, T.L.H., in April of 2013. At the hospital in which T.L.H. was born, respondent voluntarily placed the child with the Guilford County Department of Health and Human Services ("DHHS") based upon her concerns about the safety of the home that she shared with her romantic partner, Adam McNeill. Respondent's concerns stemmed from the presence of illicit drugs in the residence that she shared with Mr. McNeill and the unsafe environment created by certain unsavory individuals who frequented the home. In addition, respondent acknowledged that, even though she had been diagnosed as suffering from certain mental health problems,[1] she was not taking her prescribed psychotropic medication at that time. Nonetheless, respondent clearly indicated that, instead of relinquishing her parental rights in T.L.H., she wanted to work toward reunification with her son.

On 12 April 2013, DHHS filed a petition alleging that T.L.H. was a neglected and dependent juvenile. In its petition, DHHS alleged, among other things, that respondent "ha[d] been to the hospital on several occasions in the last year due to mental health complications" and that she "has diagnoses of schizoaffective disorder, bipolar, cannabis abuse and personality disorder." At the request of DHHS, Judge

---

[1] More specifically, respondent told a social worker that she had been diagnosed as bipolar at age fifteen, that she had been diagnosed as schizophrenic in her twenties, and that she had refrained from taking the medications that had been prescribed for her to treat these conditions because they made her feel sick.

Betty Brown appointed Amy Bullock to serve as respondent's guardian *ad litem* on a "provisional/interim basis" in an order entered on 18 April 2013 that lacked findings of fact or conclusions of law relating to the appointment issue and did not specify whether Ms. Bullock was to act in a substitutive or assistive capacity.

After a hearing held on 16 May 2013, Judge Brown entered an adjudication and disposition order on 5 June 2013 determining that T.L.H. was a dependent juvenile, dismissing the neglect allegation without prejudice, retaining T.L.H. in DHHS custody, and establishing a case plan under which respondent would visit with T.L.H. At the time of the 16 May hearing, respondent did not have housing independent of Mr. McNeill, with whom incidents of domestic violence had occurred. However, respondent was on a Housing Authority waiting list. Respondent's sole source of income consisted of $473.00 in monthly Social Security disability benefits that had been awarded based on her diagnosed mental conditions, including bipolar disorder, schizoaffective disorder, and narcolepsy. According to court summaries that had been prepared by DHHS and T.L.H.'s guardian *ad litem* and submitted for Judge Brown's consideration:

> [Respondent] has a history of substance abuse and has diagnoses of schizophrenic, chronic paranoid type, chronically noncompliant, marijuana dependence, personality disorder, rule out borderline intellectual functioning.
>     . . . .
>
>     . . . [Respondent] is not consistent in her mental health treatment and is not currently on medication.

> [Respondent] does not come to visitation timely and needs
> guidance for basic child care.

As a result, Judge Brown found in the 5 June 2013 order that:

> 11. [Respondent] has been to the hospital on several
> occasions in the last year due to mental health
> complications. According to the hospital records,
> [respondent] is diagnosed with Schizoaffective Disorder,
> Bi-polar Disorder, Cannabis Abuse and Personality
> Disorder.

A permanency planning hearing, at which respondent testified, was held on 11 July 2013 before Judge Angela C. Foster. On 9 August 2013, Judge Foster entered an order finding that respondent was not in compliance with her case plan "on any level" and had not been visiting with T.L.H. on a regular basis. As a result, Judge Foster relieved DHHS from any responsibility for making further efforts to reunify respondent with T.L.H. and determined that the permanent plan for T.L.H. would be adoption.

On 9 September 2013, DHHS filed a petition seeking to have respondent's parental rights in T.L.H. terminated on the grounds that T.L.H. was a neglected juvenile, that respondent was incapable of properly providing for T.L.H.'s care and did not have an appropriate alternate child care arrangement for T.L.H., and that respondent's parental rights in another child had previously been terminated[2] and respondent lacked the ability or willingness to establish a safe home for T.L.H.

---

[2] Respondent has two other children in addition to T.L.H., neither of whom is in her custody. An aunt has been appointed guardian for a daughter born in 2000. Respondent's parental rights in a daughter born in May 2004 were terminated on 18 September 2006.

N.C.G.S. § 7B-1111(a) (1), (6), (9) (2013). Among other things, DHHS alleged that respondent's parental rights were subject to termination for incapability pursuant to N.C.G.S. § 7B-1111(a)(6) on the basis of her "narcolepsy, mental illness (including Schizophrenia, Chronic Paranoid Type, Chronically Noncompliant, Schizo-Affective Disorder, Bipolar Disorder, and level of functioning), failure to comply with mental health treatment, and long history of using illegal substances (Cannabis Dependency)." Moreover, DHHS requested that the trial court "make an inquiry as to whether [respondent] needs to have a Guardian ad Litem appointed for purposes of this proceeding."

On 18 November 2013, Judge Thomas Jarrell, Jr., conducted a pretrial hearing regarding the termination petition. Ms. Bullock, who had served as respondent's guardian *ad litem* at the adjudication and disposition hearing and at the permanency planning proceeding, was present and stood "in for Attorney Edward Branscomb as Attorney for Mother" at the pretrial hearing. Without making any specific findings concerning respondent's mental condition or the reasons underlying Ms. Bullock's initial appointment as respondent's guardian *ad litem*, Judge Jarrell determined that "Attorney Amy C. Bullock was released by operation of law effective October 1, 2013 as the mother's guardian ad litem attorney of assistance."

The termination petition came on for hearing before the trial court on 6 January 2014. Because respondent was not present when the case was called for hearing, her trial counsel unsuccessfully sought to have the termination proceeding

continued. On 4 February 2014, the trial court entered an order finding that respondent's parental rights in T.L.H. were subject to termination based upon all the grounds enumerated in the petition and that T.L.H.'s best interests would be served by terminating respondent's parental rights.[3] Among other things, the trial court found as a fact that respondent "ha[d] been diagnosed with Bipolar Disorder, Schizophrenia, Schizo-Affective Disorder, and Narcolepsy"; that she "ha[d] a long history of failing and refusing to take her mental health medications as prescribed and recommended"; and that she "ha[d] also been diagnosed with Cannabis Dependence, has a long history of the same, tested positive for Marijuana, and failed to submit to a substance abuse assessment as requested." Respondent noted an appeal to the Court of Appeals from the trial court's termination order.

In her sole challenge to the trial court's termination order before the Court of Appeals, respondent argued that the trial court had abused its discretion by failing to conduct an inquiry concerning whether she was entitled to the appointment of a guardian *ad litem*. *In re T.L.H.*, ___ N.C. App. ___, ___, 765 S.E.2d 88, 90 (2014). A divided panel of the Court of Appeals determined that respondent's contention had merit, reversed the trial court's termination order, and remanded this case to the trial court for the purpose of determining whether respondent was, in fact, entitled to the appointment of a guardian *ad litem*. *Id.* at ___, 765 S.E.2d at 92. In dissent, Judge

---

[3] The trial court also terminated the parental rights of T.L.H.'s unknown father.

Robert C. Hunter argued that Judge Jarrell had, in fact, conducted an inquiry into the necessity for appointment of a parental guardian *ad litem* at the pretrial hearing, that the record did not contain any indication that respondent's mental condition had deteriorated between the pretrial hearing and the termination hearing to such an extent that the trial court abused its discretion by failing to conduct an inquiry into the extent to which she was entitled to the appointment of a guardian *ad litem*, and that the trial court had not abused its discretion by failing to make an inquiry into respondent's competence. *Id.* at ___, 765 S.E.2d at 93-94 (Hunter, J., dissenting). DHHS and T.L.H.'s guardian *ad litem* noted an appeal from the Court of Appeals' decision to this Court. We reverse that decision.

The statutory provisions governing a parent's entitlement to the appointment of a guardian *ad litem* in termination of parental rights proceedings have changed over time. Prior to 1 October 2005, N.C.G.S. § 7B-1101(1) provided that a parental guardian *ad litem* must be appointed "[w]here it is alleged that a parent's rights should be terminated pursuant to [N.C.G.S. §] 7B-1111(6), and the incapability to provide proper care and supervision pursuant to that provision is the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition." N.C.G.S. § 7B-1101(1) (2003). From 1 October 2005 until 30 September 2013, N.C.G.S. § 7B-1101.1(c) provided that "the court may appoint a guardian ad litem for a parent if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished

capacity." *Id.* § 7B-1101.1(c) (2011). Under the pre-October 2013 version of N.C.G.S. § 7B-1101.1(c), the difference between the roles assumed by a guardian *ad litem*, whether substitutive or assistive, depended upon "[t]he extent of the parent's disability." *In re P.D.R.*, ___ N.C. App. ___, ___, 737 S.E.2d 152, 158 (2012). However, effective for juvenile proceedings filed or pending on or after 1 October 2013, the General Assembly amended N.C.G.S. § 7B-1101.1(c) to authorize the appointment of a parental guardian *ad litem* "for a parent who is incompetent in accordance with . . . Rule 17" of the North Carolina Rules of Civil Procedure.[4] N.C.G.S. § 7B-1101.1(c) (2013). An "incompetent adult" is defined as one "who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition." *Id.* § 35A-1101(7) (2013). As

---

[4] According to Rule 17(b)(2):

> In actions or special proceedings when any of the defendants are . . . incompetent persons, whether residents or nonresidents of this State, they must defend by general or testamentary guardian, if they have any within this State or by guardian ad litem appointed as hereinafter provided; and if they have no known general or testamentary guardian in the State, and any of them have been summoned, the court in which said action or special proceeding is pending, upon motion of any of the parties, may appoint some discreet person to act as guardian ad litem, to defend in behalf of such . . . incompetent persons . . . .

N.C.G.S. § 1A-1, Rule 17(b)(2) (2003).

a result, following the enactment of the 2013 amendment to N.C.G.S. § 7B-1101.1, respondent would have only been entitled to the appointment of a guardian *ad litem* in the event that she was incompetent and would not have been entitled to the continued assistance of a guardian *ad litem* who had been appointed based solely on a finding of diminished capacity.

As the Court of Appeals has previously noted, "[a] trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention [that] raise a substantial question as to whether the litigant is *non compos mentis*." *In re J.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005) (citation omitted). A trial court's decision concerning whether to appoint a parental guardian *ad litem* based on the parent's incompetence is reviewed on appeal for abuse of discretion. *See State v. Turner*, 268 N.C. 225, 230, 150 S.E.2d 406, 410 (1966) (observing that a trial court's competency determination "rests in the sound discretion of the trial judge in the light of his examination and observation of the particular [individual]"). A trial court's decision concerning whether to conduct an inquiry into a parent's competency is also discretionary in nature. *In re J.A.A.*, 175 N.C. App. at 72, 623 S.E.2d at 49. For that reason, trial court decisions concerning both the appointment of a guardian *ad litem* and the extent to which an inquiry concerning a parent's competence should be conducted are reviewed on appeal using an abuse of discretion standard. *In re M.H.B.*, 192 N.C. App. 258, 261, 664 S.E.2d 583, 585 (2008) (citation omitted). An "[a]buse of discretion

results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

According to both DHHS and T.L.H.'s guardian *ad litem*, Judge Jarrell did, contrary to the decision reached by the Court of Appeals, conduct an inquiry into the issue of whether respondent was incompetent at the pretrial hearing. More specifically, DHHS and T.L.H.'s guardian *ad litem* contend that Judge Jarrell could not have concluded that respondent's guardian *ad litem* "was released by operation of law effective October 1, 2013" without determining that Ms. Bullock had been appointed to serve as respondent's guardian *ad litem* on diminished capacity grounds and that respondent was not entitled to the appointment of a guardian *ad litem* for competency-related reasons. As a result, DHHS and T.L.H.'s guardian *ad litem* contend that Judge Jarrell actually determined that respondent was not incompetent and that no further inquiry into her competence prior to the termination hearing was necessary. We are not persuaded by this contention.

A careful review of the record provides no indication that Judge Jarrell conducted any inquiry into respondent's competence at the pretrial hearing. Although Judge Jarrell apparently assumed that Ms. Bullock had been appointed as respondent's guardian *ad litem* on diminished capacity grounds, Judge Brown's appointment order simply does not indicate whether Ms. Bullock was appointed to act in a substitutive or assistive capacity. In addition, given the absence of a

transcript of the pretrial hearing, we have no assurance that Judge Jarrell inquired into the issue of respondent's competence during the course of that proceeding. Finally, we note that Ms. Bullock stood "in for Attorney Edward Branscomb as Attorney for Mother" at the pretrial hearing even though N.C.G.S. § 7B-1101.1(d) precludes "the guardian ad litem [from] act[ing] as the parent's attorney," N.C.G.S. § 7B-1101.1(d) (2013), which suggests that Ms. Bullock had stopped acting as respondent's guardian *ad litem* by the time of the pretrial hearing, a development that would be consistent with the 1 October 2013 effective date of the current version of N.C.G.S. § 7B-1101.1(c). As a result, we conclude that Judge Jarrell's determination that "[Ms.] Bullock was released by operation of law effective October 1, 2013" does not tend to indicate that Judge Jarrell inquired into respondent's competence at the pretrial hearing and suggests, instead, that the provisions of the pretrial order relating to Ms. Bullock's removal as respondent's guardian *ad litem* reflected a purely ministerial act.

Although we are unable to conclude that an inquiry into respondent's competence was actually conducted during the course of this proceeding, we are equally unable to conclude that the apparent failure to conduct such an inquiry constituted an abuse of discretion. As an initial matter, we note that the standard of review applicable to claims like the one before us in this case is quite deferential. Affording substantial deference to members of the trial judiciary in instances such as this one is entirely appropriate given that the trial judge, unlike the members of a

reviewing court, actually interacts with the litigant whose competence is alleged to be in question and has, for that reason, a much better basis for assessing the litigant's mental condition than that available to the members of an appellate court, who are limited to reviewing a cold, written record.

Moreover, evaluation of an individual's competence involves much more than an examination of the manner in which the individual in question has been diagnosed by mental health professionals. Although the nature and extent of such diagnoses is exceedingly important to the proper resolution of a competency determination, the same can also be said of the information that members of the trial judiciary glean from the manner in which the individual behaves in the courtroom, the lucidity with which the litigant is able to express himself or herself, the extent to which the litigant's behavior and comments shed light upon his or her understanding of the situation in which he or she is involved, the extent to which the litigant is able to assist his or her counsel or address other important issues, and numerous other factors. A great deal of the information that is relevant to a competency determination is simply not available from a study of the record developed in the trial court and presented for appellate review. As a result, when the record contains an appreciable amount of evidence tending to show that the litigant whose mental condition is at issue is not incompetent, the trial court should not, except in the most extreme instances, be held on appeal to have abused its discretion by failing to inquire into that litigant's competence. *Cf. Artesani v. Gritton*, 252 N.C. 463, 467, 113 S.E.2d

895, 898 (1960) (stating that, "[w]hen the court hears evidence to determine competency, its factual conclusion will not be set aside on appeal if there be any evidence to support the finding," since "[t]he weight which the trial judge accords the evidence rests in his discretion").

A careful review of the record developed in the trial court compels the conclusion that sufficient evidence tending to show that respondent was not incompetent existed to obviate the necessity for the trial court to conduct a competence inquiry before proceeding with the termination hearing. Respondent exercised what appears to have been proper judgment in allowing DHHS to take custody of T.L.H. at the hospital shortly after his birth. In addition, respondent demonstrated a reasonable understanding of the proceedings that would inevitably result from that decision when she informed DHHS that she wished to preserve the right to attempt to be reunified with T.L.H. At the 11 July 2013 permanency planning hearing, respondent testified that she had obtained Zyprexa to treat her mental conditions, discussed the necessity for the use of budgeting techniques, demonstrated an understanding of her need to apply for reduced-rate or subsidized housing, and appeared to understand that, given her income limitations, she needed to use her available financial resources carefully. Respondent's testimony at the permanency planning hearing was cogent and gave no indication that she failed to understand the nature of the proceedings in which she was participating or the consequences of the decisions that she was being called upon to make. In addition,

respondent signed an apartment lease in November 2013, having previously testified at the permanency planning hearing that obtaining an independent place to live would allow her to become drug-free, given that "the only reason why the drugs was ever exposed to me is because I was living in the environment around it." As a result, the record contains ample support for a determination that respondent understood that she needed to properly manage her own affairs and comprehended the steps that she needed to take in order to avoid the loss of her parental rights in T.L.H.

Acting in reliance on its decision in *In re N.A.L.*, 193 N.C. App. 114, 118-19, 666 S.E.2d 768, 771-72 (2008), the Court of Appeals may have concluded that allegations that a parent has been diagnosed with significant mental health problems, standing alone, suffices to necessitate an inquiry into the parent's competence. *In re T.L.H.*, ___ N.C. App. at ___, 765 S.E.2d at 90 (stating that "allegations of mental health problems that raise a question regarding a parent's competence require the trial court to inquire into whether a GAL need be appointed"). However, *In re N.A.L.* does not appear to us to require a trial judge to inquire into a parent's competency solely because the parent is alleged to suffer from diagnosable mental health conditions. Instead, *In re N.A.L.* held that, given the particular facts contained in the record developed in that case regarding the parent's mental health issues, an inquiry into the necessity for the appointment of a parental guardian *ad litem* was required. *In re N.A.L.*, 193 N.C. App. at 119, 666 S.E.2d 772. As a result, assuming that *In re N.A.L.* is, as respondent suggests, a competency rather than a

diminished capacity case, *In re N.A.L.* does not stand for the proposition that a trial court must inquire into the necessity for the appointment of a parental guardian *ad litem* solely because the parent has diagnosable mental health problems. *See In re J.R.W.*, ___ N.C. App. ___, ___, 765 S.E.2d 116, 120 (2014) (noting the Court of Appeals' "prior holdings that evidence of mental health problems is not *per se* evidence of incompetence to participate in legal proceedings"), *disc. rev. denied*, ___ N.C. ___, 767 S.E.2d 840 (2015).[5]

Similarly, the trial court was not required to inquire into the appropriateness of the appointment of a parental guardian *ad litem* simply because DHHS sought to have respondent's parental rights in T.L.H. terminated for mental health-related grounds and requested the trial court to conduct a competency inquiry. In support of its decision to reverse the trial court's termination order and remand this case to that court for further proceedings, the Court of Appeals pointed to "the trial court's reliance on [respondent's multiple ongoing mental health conditions] to support grounds to terminate her parental rights." *In re T.L.H.*, ___ N.C. App. at ___, 765 S.E.2d at 92. Nevertheless, in the aftermath of the enactment of the 2005 amendment to the relevant provisions of Chapter 7B of the North Carolina General Statutes, an

---

[5] The facts before the Court in this case, in which there is substantial evidence tending to show that respondent understood the nature of the proceedings in which she was involved and the steps that she needed to take to avoid losing her parental rights in T.L.H., differ substantially from those at issue in *In re N.A.L.*, in which the Court of Appeals made no mention of any evidence tending to indicate that the mother understood the situation in which she found herself, while referring to reports that the mother "repeatedly yelled and shouted profanity" toward her child. 193 N.C. App. at 116, 666 S.E.2d at 770.

allegation that parental rights are subject to termination based upon incapability stemming, directly or indirectly, from a parent's diagnosable mental health conditions does not automatically necessitate the appointment of a parental guardian *ad litem*. Although the sort of mental difficulties that might support the termination of a parent's parental rights on the grounds of incapability may well show that the parent is likely to be incompetent, such an inference is not necessarily correct. In other words, while the test for incompetence is whether the parent "lacks sufficient capacity to manage [her] own affairs or to make or communicate important decisions concerning [her] person, family, or property," N.C.G.S. § 35A-1101(7), the trial court is allowed to terminate a parent's parental rights for incapability if "the parent is incapable of providing for the proper care and supervision of the juvenile" due to "substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile," *id.* § 7B-1111(a)(6). The differences between the standard used in determining competence and the standard used in determining whether a parent's parental rights are subject to termination for incapability prevents us from concluding that the existence of an allegation that a parent's parental rights are subject to termination for incapability necessitates an inquiry into the parent's competence for purposes of the appointment of a substitutive guardian *ad litem*, even if the party initiating the termination proceeding suggests that such an inquiry would be appropriate.

Admittedly, the trial court noted respondent's mental health difficulties in the termination order. However, in addition to stating her mental limitations, the termination order focused upon respondent's apparent unwillingness to make the changes necessary to permit her to regain custody of T.L.H. More specifically, the termination order found that: (1) after adjudication "[t]he mother failed to maintain regular contact with [DHHS]"; (2) "the mother has been noncompliant with the recommended mental health medication regimen"; (3) "[a]lthough the juvenile has been in custody for eight months, the mother only visited the juvenile three times . . . despite having had the opportunity to attend supervised visits once a week"; (4) "[s]ince the juvenile has been in custody, the mother has made no significant progress toward correcting the conditions that led to removal"; and (5) "[t]he mother does not have the willingness to comply with mental health treatment and has declined an assessment and possible treatment for her substance abuse." As a result, the trial court's termination decision rested on considerations other than the fact that respondent appears to have suffered from one or more diagnosable mental health conditions.

We do not, of course, wish to be understood as holding that the trial court would have had no basis for inquiring into respondent's competence in light of her history of serious mental health conditions. A trial court would have been well within the bounds of its sound discretion to conclude that respondent's lengthy history of serious mental illness raised a substantial question concerning her competence sufficient to

justify further inquiry. In fact, such an inquiry in this case might well have been advisable. However, we are unable to conclude that the trial court could not have had a reasonable basis for reaching the opposite result given the coherent manner in which respondent testified at the permanency planning hearing and the other indications in the record tending to show that respondent was aware of, and able to appropriately participate in, the proceedings being conducted before the trial court. As a result, the decision of the Court of Appeals is reversed.[6]

REVERSED.

---

[6] The Court of Appeals further determined that Judge Brown erred by failing to delineate the role to be served by respondent's guardian *ad litem*, *In re T.L.H.*, ___ N.C. App. at ___, 765 S.E.2d at 92, and that Judge Jarrell erred by failing to conduct a hearing to determine the role respondent's guardian *ad litem* had filled before removing respondent's guardian *ad litem*, *id.* at ___, 765 S.E.2d at 90. However, respondent did not seek review of or advance any argument challenging either Judge Brown's 18 April 2013 guardian *ad litem* appointment order or Judge Jarrell's 18 November 2013 pretrial order before the Court of Appeals. As a result, since respondent did not properly preserve any challenge to the lawfulness of either of these orders before the Court of Appeals, the Court of Appeals' determinations regarding those orders are reversed as well. *See* N.C. R. App. P. 10.