IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1099

Filed 5 November 2024

Caldwell County, Nos. 22 JT 5–6

IN THE MATTER OF: S.D.H., D.W.H.

Appeal by Respondent-Father from a termination of parental rights order entered 19 September 2023 and amended 3 October 2023 by Judge Mark L. Killian in Caldwell County District Court. Heard in the Court of Appeals 1 May 2024.

*Hooks Law, P.C., by Laura G. Hooks, for Respondent-Appellant Father.*

*Stephen M. Shoeberle for Petitioners-Appellees.*

*No brief filed on behalf of the Guardian ad Litem.*

CARPENTER, Judge.

Respondent-Father appeals from an amended order entered 3 October 2023 ("the Order") terminating his parental rights to his minor children S.D.H. ("Stella") and D.W.H. ("Decker").[1] On appeal, Respondent-Father argues that the trial court abused its discretion by ruling on disposition absent guardian ad litem evidence and failed to consider relevant best interest factors. After careful review, we largely agree

---

[1] Pseudonyms are used to protect the identities of the minor children and for ease of reading. *See* N.C. R. App. P. 42(b).

with Respondent-Father. Without disturbing the trial court's determinations concerning the adjudicatory phase, we vacate the disposition portion of the Order and remand for a new disposition hearing.

## I.  Factual & Procedural Background

Stella and Decker (collectively "the Juveniles") are the subject of this appeal, which arises from the Order. The Juveniles have been the subject of parallel litigation across Virginia and North Carolina involving one nuclear family. The Paternal Grandparents (collectively "Petitioners") are the biological father and stepmother of Respondent-Father.

In October 2017, Decker was born to Respondent-Father and Decker's Mother, who is not a party to this appeal. Respondent-Father was incarcerated right after Decker was born, but subsequently acquired legal custody of Decker for two years in Virginia. In May 2019, Stella was born to Respondent-Father and Stella's Mother, who is not a party to this appeal. Stella was originally placed in the custody of Respondent-Father's mother in Virginia, and never resided with Respondent-Father.

Respondent-Father has a well-documented history of illegal drug use, including heroin, fentanyl, opiates, and methamphetamine. As a result, he has encountered challenges in providing a safe environment for the Juveniles. Petitioners gained physical custody of Decker in August 2020, after Maternal Grandmother drove Decker from Virginia to North Carolina and placed him in their care. A Virginia trial court placed Stella with Petitioners in North Carolina, after

Petitioners requested custody to reunite her with Decker. Stella's case involved the Virginia Department of Social Services ("Virginia DSS") in juvenile court for Virginia.

On 13 January 2021, the Virginia court entered a final "Order for Custody/Parenting Time/Visitation" granting the Paternal Grandfather legal custody of Stella. The same day, the Virginia court entered a "Child Protective Order – Abuse and Neglect" for Stella as to Respondent-Father and Stella's Mother. In relevant part, the Virginia court's findings recognized Respondent-Father had a serious drug problem and issued a no-contact order in protection of Stella. The order directed, in relevant part, the following:

> (1) [Respondent-Father] shall not use illegal drugs nor prescription drugs in excess of prescribed amounts.
> (2) [Respondent-Father] shall have no contact with [Stella] until such time as he has passed a hair follicle drug test or he has passed four consecutive clean drug tests as arranged by [Virginia DSS].
> (3) [Respondent-Father] shall be subject to random drug testing at his own expense at the request of [Virginia DSS]. Should he refuse to comply with a request for drug testing within 24-hours then the test shall be deemed positive.
> (4) Once [Respondent-Father] has complied with [number (2)] of this Exhibit, he shall be allowed supervised visitation with [Stella] as supervised by [Paternal Grandfather] or his designee.
> (5) Should [Respondent-Father] have a test deemed positive or test positive for illegal drugs then he shall have no contact with [Stella] until such time as he has passed four consecutive clean drug tests as administered by DSS. Thereafter he shall again have supervised contact as supervised by [Paternal Grandfather] or his designee.
>     . . .
> (8) [Virginia DSS] shall not be required to maintain the case if there has been no contact by the parents after two

months.
(9) All parties shall obey the laws of the Commonwealth and be of good behavior.

The record shows that Respondent-Father did not submit drug tests to Virginia DSS or take further steps to gain visitation rights. Respondent-Father's last lawful contact with Stella, prior to the issuance of the "Child Protective Order – Abuse and Neglect," was October 2020.

A provision in the Virginia order left uncertain which jurisdiction—Virginia or North Carolina—was proper amidst proceedings in both states. In February 2023, the Virginia court concluded jurisdiction was more appropriate in North Carolina, as Virginia was no longer a convenient forum.

On 19 January 2021, Petitioners filed a civil custody action in Caldwell County, North Carolina requesting legal custody of Decker. On 14 June 2021, after the trial court entered an *ex parte* temporary order awarding Paternal Grandfather custody of Decker in January of 2021, the trial court entered a permanent custody order awarding Paternal Grandfather sole legal custody of Decker. The trial court granted Respondent-Father visitation rights, contingent on his meeting the following conditions:

> (1) [Respondent-Father] must have six (6) consecutive clean drug screens at least twenty-five (25) days and not more than thirty-two (32) days apart from the last test. If [Respondent-Father] misses one (1) test, or has a positive test, [he] will begin the sequence over again;
> (2) [Respondent-Father] shall obtain a substance abuse assessment and follow the recommended treatment;

(3) [Respondent-Father] shall sign the necessary releases so the [Petitioners] can know the treatment plan for [him];

(4) [Petitioners] may request random drug screens and [Respondent-Father] must pay for same. If the results are negative, [Petitioners] shall reimburse [Respondent-Father] for the cost of the test(s). Should [Respondent-Father] refuse to comply with a drug test within twenty-four (24) hours of such request, then the test shall be deemed positive;

(5) Should [Respondent-Father] have a positive test result, the whole process starts over and [he] must have six (6) consecutive negative test results before visiting;

(6) [Respondent-Father] shall [not] use illegal controlled substances nor prescription medications in excess of prescribed amounts;

(7) [Respondent-Father] shall [not] consume alcohol to excess in the presence of the minor child;

(8) There shall be no telephone contact, or any other contact, with the [Decker] at this time;

(9) All visits shall take place in North Carolina, and the [Respondent-Father] shall not remove [Decker] from the care of the [Petitioners].

The record shows Respondent-Father failed to submit drug test results to Petitioners or take further steps to gain visitation rights. Respondent-Father's last lawful visit with Decker, prior to the custody order, was on 28 December 2020.

In January 2023, Petitioners filed a petition to terminate Respondent-Father's parental rights to the Juveniles, alleging neglect, nonsupport, and willful abandonment. The trial court appointed Attorney Jared T. Amos (the "Guardian ad Litem") in the dual roles of guardian ad litem and attorney advocate. The adjudication and disposition hearings occurred on 22 August 2023. The trial court received testimony from Paternal Step-Grandmother, Respondent-Father, and

arguments from all parties; however, it did not receive testimony, written reports, or recommendations from the Guardian ad Litem, aside from argument in his capacity as attorney advocate.[2]

Paternal Step-Grandmother testified that while the Juveniles were in the custody of Petitioners, they had not received child support from Respondent-Father. The Juveniles had healthcare needs which Petitioners addressed. Stella was tongue-tied, which required surgery. She also underwent surgery to have her tonsils and adenoids removed. The surgery resulted in Stella having a series of infections which improved after further treatment. Decker had impacted eardrums, which resulted in developmental delays in speech and hearing. Decker attended weekly therapy because he had issues playing properly with other children. The Paternal Step-Grandmother testified that Respondent-Father had not participated in the Juveniles' medical decisions or care.

Respondent-Father testified that he and Paternal Grandfather had a complicated relationship, and his few attempts to contact Petitioners were not well received. Respondent-Father acknowledged his past drug problems and incarceration in his testimony. Respondent-Father put forth evidence, including a letter from his Virginia probation officer, reporting that: Respondent-Father

---

[2] The parties, with the exception of the Guardian ad Litem, presented disposition evidence during the adjudication phase, without objection or subsequent challenge on appeal by Respondent-Father.

commenced supervised probation on 8 July 2022; his adjustment to supervision had been satisfactory; he had reported to all scheduled appointments and tested negative for all administered drug screens; he had no known arrests; he had been employed by a rehabilitation facility since January 2023 and had recently become employed by a manufacturing company. Respondent-Father resided in Virginia for the duration of these proceedings. Respondent-Father conceded that he had not made the same effort to contact Stella as he had Decker, and he attributed this disparity to the no-contact order and the bond he formed with Decker in the two years he had custody.

On 22 August 2023, the trial court concluded that adjudication grounds existed to terminate Respondent-Father's parental rights, before proceeding to disposition. Petitioners' counsel presented no new evidence and asked the trial court to accept the evidence presented at adjudication. Respondent-Father's counsel presented no new evidence. The Guardian ad Litem did not testify or present any evidence of an investigation. After closing arguments, the trial court determined it was in the Juveniles' best interest to terminate Respondent-Father's parental rights.

On 19 September 2023, the trial court entered an adjudication and disposition order in the termination of parental rights proceeding. On 3 October 2023, the trial court entered the Order, which concluded that termination was in the Juveniles' best interest.

On 26 September 2023, Respondent-Father filed a written notice of appeal. Then, on 6 October 2023, he filed a timely, yet defective, amended written notice of appeal.

## II.     Jurisdiction

Respondent-Father has a right to appeal pursuant to N.C. Gen. Stat. § 7B-1001(a)(7) (2023). Respondent-Father's amended notice of appeal, however, did not comply with Rule 3 because it did not correctly identify the title and filing date of the Order. *See* N.C. R. App. P. 3(d) ("The notice of appeal . . . shall designate the judgment or order from which appeal is taken . . . .").

As a result, Respondent-Father filed a petition for writ of certiorari ("PWC"). A PWC is a "prerogative writ" which we may issue to aid our jurisdiction. *See* N.C. Gen. Stat. § 7A-32(c) (2023). But issuing a PWC is an extraordinary measure. *See Cryan v. Nat'l Council of YMCA of the U.S.*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023). A petitioner must satisfy a two-part test before we will issue a PWC. *See id.* at 572, 887 S.E.2d at 851. "First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Id.* at 572, 887 S.E.2d at 851 (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). "Second, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Id.* at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982)). "We require extraordinary circumstances because a writ of certiorari 'is not intended as a substitute for a notice

of appeal.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839).

"If courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of noticing appeals.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839). An extraordinary circumstance "generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23, 848 S.E.2d 1, 11 (2020)).

Here, Respondent-Father argues the trial court failed to adhere to statutory mandates concerning the guardian ad litem. After careful review, there is merit to his argument. *See id.* at 572, 887 S.E.2d at 851. Further, the gravity of such error, where the fundamental rights of a parent are at stake, could result in substantial harm to both Respondent-Father and the Juveniles. *See id.* at 573, 887 S.E.2d at 851. Accordingly, this is an extraordinary circumstance. *See id.* at 572, 887 S.E.2d at 851. In our discretion, we allow Respondent-Father's PWC to aid our jurisdiction.

### III. Issue

The sole issue on appeal is whether the trial court abused its discretion in concluding that it was in the best interest of the Juveniles to terminate Respondent-Father's parental rights at the disposition stage.

### IV. Analysis

- 9 -

Respondent-Father argues that the trial court abused its discretion during the disposition stage of the termination of parental rights proceeding. Specifically, Respondent-Father argues that the trial court erred by ruling on disposition absent guardian ad litem evidence and failing to consider relevant best interest factors. Conversely, Petitioners argue that the record was sufficient and Respondent-Father's arguments lack legal justification.

In short, we agree with Respondent-Father. Although the trial court considered several best interest factors, the trial court abused its discretion by ruling on disposition without necessary evidence from the Guardian ad Litem concerning the best interests of the Juveniles.

**A. Termination of Parental Rights**

A termination of parental rights proceeding is a two-stage process—adjudication and disposition. *In re A.B.*, 239 N.C. App. 157, 160, 768 S.E.2d 573, 575 (2015). "After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2023).

"We review the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *In re C.B.*, 375 N.C. 556, 560, 850 S.E.2d 324, 328 (2020). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). "[O]ur

appellate courts are bound by the trial court's findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110–11, 316 S.E.2d 246, 252–53 (1984).

"The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re C.B.,* 375 N.C. at 560, 850 S.E.2d at 327. "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

At the dispositional stage, the trial court must consider several factors in its best interest analysis and make written findings regarding those that are relevant:

> (1) The age of the juvenile. (2) The likelihood of adoption of the juvenile. (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile. (4) The bond between the juvenile and the parent. (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement. (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a). "[I]t is the province of the trial court to weigh the relevant factors in determining [the child's] best interests." *In re J.C.L.*, 374 N.C. 772, 787, 845 S.E.2d 44, 56 (2020).

**B. Guardian ad Litem**

"When an appellant argues the trial court failed to follow a statutory mandate,

the error is preserved, and the issue is a question of law and reviewed de novo." *In re J.C.-B.*, 276 N.C. App. 180, 192, 856 S.E.2d 883, 892 (2021). "A statutory mandate that automatically preserves an issue for appellate review is one that, either: (1) requires a specific act by a trial judge; or (2) leaves no doubt that the legislature intended to place the responsibility on the judge presiding at the trial, or at specific courtroom proceedings that the trial judge has authority to direct." *In re E.D.*, 372 N.C. 111, 121–22, 827 S.E.2d 450, 457 (2019) (*purgandum*).

The Juvenile Code requires that the trial court appoint a guardian ad litem for juvenile(s) in two scenarios. *See* N.C. Gen. Stat. §§ 7B-601(a), -1108(b) (2023). In the first scenario, the trial court must appoint a guardian ad litem in abuse and neglect cases, and may do so in dependency cases. N.C. Gen. Stat. § 7B-601(a). Second, when a petitioner files a petition to initiate a private termination proceeding and respondent answers denying any material allegations, the trial court must appoint a guardian ad litem to ensure the juvenile's best interest is represented. N.C. Gen. Stat. § 7B-1108(b). Additionally, this subsection mandates that "[a] licensed attorney shall be appointed to assist those guardians ad litem who are not attorneys licensed to practice in North Carolina." *Id.*

A guardian ad litem appointed under section 7B-1108 has the same duties as a guardian ad litem appointed under section 7B-601. *See* N.C. Gen. Stat. §§ 7B-601(a), -1108(b). In pertinent part, a guardian ad litem's responsibilities are as follows:

> To make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; . . . to offer evidence and examine witnesses at adjudication; . . . to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court.

N.C. Gen. Stat. § 7B-601(a). A guardian ad litem program "'represents' a juvenile within the meaning of N.C. [Gen. Stat.] §§ 7B-601 and 7B-1108 by performing the duties listed in [N.C. Gen. Stat. §] 7B-601." *In re J.H.K.,* 365 N.C. 171, 178, 711 S.E.2d 118, 122 (2011) (reasoning that a guardian ad litem volunteer who "regularly filed reports describing the children's needs" and other important matters, including "her recommendations concerning the best interests of the children in light of her ongoing investigation" satisfied the requirements of N.C. Gen. Stat. § 7B-601).

Nevertheless, "the guardian ad litem and the attorney advocate perform distinct and separate roles under the juvenile code." *In re R.A.H.,* 171 N.C. App. 427, 431, 614 S.E.2d 382, 385 (2005). Once appointed, the guardian ad litem is "involved at all stages of the proceeding, interviewing the child, the parents, and any other persons relevant to the proceedings . . ." to "acquire intimate knowledge pertinent to the best interests of the child." *Id.* at 431, 614 S.E.2d at 385. The guardian ad litem should work "with all parties to both determine what course of action was in the best interests of the child, and how best to pursue that course of action." *Id.* at 431, 614 S.E.2d at 385. Thereafter during disposition, the guardian ad litem must offer

- 13 -

evidence, either written reports, testimony, or both, recommending to the trial court which course of action is in the best interests of the child. Otherwise, the trial court is not properly equipped to rule on best interests, and we are in no position to review the trial court's dispositional ruling.

Unlike the guardian ad litem, the attorney advocate "is not required to conduct [a] field investigation, or interview witnesses." *Id.* at 431, 614 S.E.2d at 385. The attorney advocate's role is to protect the juvenile's legal rights, by "provid[ing] legal advice and assistance to the guardian ad litem in representing the minor child." *Id.* at 431, 614 S.E.2d at 385.

Consequently, "[t]he functions of the guardian ad litem and the attorney advocate are not sufficiently similar to allow one to 'pinch hit' for the other when the best interest of a juvenile is at stake." *Id.* at 431, 614 S.E.2d at 385.

One of the stated purposes of our Juvenile Code is "[t]o provide standards . . . for ensuring that the best interests of the juvenile are of paramount consideration by the court and that when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home *within a reasonable amount of time.*" N.C. Gen. Stat. §7B-100(5) (2023) (emphasis added).

When "a child [is] not represented by a guardian ad litem at a critical stage of the termination proceedings," we "must presume prejudice." *In re R.A.H.,* 171 N.C. App. at 431, 614 S.E.2d at 385. Under such circumstances, "[t]he trial court should have terminated the hearing, appointed a guardian ad litem for [the juvenile], and

set a new hearing date giving the guardian ad litem sufficient time to become familiar with the case and make the relevant inquiries and investigations." *Id.* at 431–32, 614 S.E.2d at 385.

Although sections 7B-601 and 7B-1108 compel action on the part of the guardian ad litem, it is the evidentiary basis for the trial court's ruling and ultimately the parties who suffer when the guardian ad litem fails to adhere to statutory requirements. *See* N.C. Gen. Stat. §§ 7B-601(a), -1108(b). "[T]he 'paramount importance of the child's best interest and the need to place children in safe, permanent homes within a reasonable time' weigh[s] heavily throughout every phase of a juvenile proceeding." *In re O.E.M.*, 379 N.C. 27, 34, 864 S.E.2d 257, 263 (2021) (quoting *In re T.R.P.*, 360 N.C. 588, 601, 636 S.E.2d 787, 796 (2006)). Indeed, the stakes are considerably higher for a respondent in a termination proceeding than in an abuse, neglect, or dependency proceeding, as it may result in the "permanent severance of the parent-child relationship and the extinguishment of an individual's constitutional status as a parent." *See id.* at 34, 864 S.E.2d at 263.

Sections 7B-601 and 7B-1108 do not explicitly state it is the trial court's responsibility to ensure the guardian ad litem performs its statutory duties; however, given the legislature's emphasis on providing permanence within a reasonable amount of time, we believe this goal is best served by the trial court monitoring the guardian ad litem's performance of its statutory duties in the first instance rather than waiting for appellate review. *See* N.C. Gen. Stat. §§ 7B-601(a), -1108(b); *see also*

N.C. Gen. Stat. §7B-100(5) (2023). As the "polar star" in North Carolina is the best interest of the child, the trial court must be equipped to make an informed decision which is supported by the evidence. *See In re R.A.H.,* 171 N.C. App. at 431, 614 S.E.2d at 385. Therefore, we conclude that the Juvenile Code imposes an implicit duty upon the trial court to ensure the role(s) of the guardian ad litem are performed as required by statute. *See* N.C. Gen. Stat. §§ 7B-601(a), -1108(b); *see also* N.C. Gen. Stat. §7B-100(5).

In *In re R.A.H.*, we reasoned that when the trial court realized a juvenile's best interest was not represented by a guardian ad litem, the trial court should have terminated the hearing, appointed a guardian ad litem, and set a new hearing date to permit an investigation. 171 N.C. App. at 431–32, 614 S.E.2d at 385. There, although the trial court properly appointed an attorney advocate for the duration of the proceedings, the court failed to appoint a guardian ad litem pursuant to section 7B-601 until four days into the termination hearing, despite the petition alleging neglect. *Id.* at 429–30, 614 S.E.2d at 384–85. On appeal, we concluded that where a child's best interest is not represented by a guardian ad litem at a critical stage of termination proceedings, we must presume prejudice. *See id.* at 431, 614 S.E.2d at 385. The trial court should monitor whether a juvenile's best interest is represented by a guardian ad litem by assessing whether they performed their mandatory duties, distinct from those required of the attorney advocate. *Id.* at 431–32, 614 S.E.2d at 385.

We review Respondent-Father's arguments against this framework. Respondent-Father challenges the sufficiency of the evidence supporting findings of fact 33 and 34, which state in part: "[t]hat the termination of the parental rights of the [Respondent-Father] with regards to [the Juveniles] would be in the best interest of the minor children" and "[t]hat in evaluating whether or not it is in the best interests of the minor children to terminate the parental rights of Respondent Father, the Court has also considered the factors delineated in 7B-1110." Specifically, Respondent-Father argues that the Guardian ad Litem did not fulfill his statutorily-required role. Therefore, he asserts the trial court did not follow statutory mandates by ruling on disposition absent critical evidence from the Guardian ad Litem. We agree.

Here, the trial court appointed the Guardian ad Litem to represent the best interests of the Juveniles. In the Order, the trial court noted the Guardian ad Litem "was present at the hearing, having been appointed as the Guardian ad Litem for [the Juveniles]," and decreed after the proceeding "[t]hat having completed his services for which he was involved, [the Guardian ad Litem], [was] hereby released and discharged as the Guardian ad Litem for [the Juveniles] and shall have no further duties and responsibilities regarding this case." The Guardian ad Litem performed dual roles as guardian ad litem and as attorney advocate. *See In re J.H.K.,* 365 N.C. at 175, 711 S.E.2d at 120.

After careful review, the record is devoid of evidence offered by the Guardian

ad Litem. This case is analogous to *In re R.A.H.*, where a guardian ad litem was not appointed by the trial court until four days into the termination of parental rights hearing, and thus no pre-trial investigation was completed and no reports were produced for the record. *See* 171 N.C. App. at 429–30, 614 S.E.2d at 384–85. Accordingly, the juvenile lacked representation of their best interest during a critical stage of the termination hearing. *See id.* at 431, 614 S.E.2d at 385.

Here, the Guardian ad Litem provided no indication that he conducted a pre-trial investigation or prepared reports to assist the trial court in understanding the Juveniles' family dynamics or determining what was in their best interest. Therefore, the trial court erred by ruling on disposition absent evidence of the Guardian ad Litem's investigation. Because the Juveniles lacked adequate representation of their best interests during a critical stage of this proceeding, we presume prejudice. *See id.* at 431, 614 S.E.2d at 385. As a result, we do not reach Respondent-Father's argument that the trial court failed to consider relevant best interest factors.

In this case, we have no indication that the Guardian ad Litem completed his duties as required by statute. *See* N.C. Gen. Stat. § 7B-601. Thus, just as the trial court had the explicit statutory duty to appoint the Guardian ad Litem prior to this termination of parental rights proceeding, the trial court had an implicit duty to receive information or evidence from the Guardian ad Litem at the hearing to allow the trial court to determine whether the Guardian ad Litem sufficiently performed his duties. Otherwise, the trial court would have no input from the statutorily-

appointed Guardian ad Litem regarding family dynamics and circumstances which are necessary to permit the trial court to make an informed decision as to the best interest of the Juveniles. To allow otherwise would defeat the purpose of the statutory requirement that a Guardian ad Litem be appointed. *See* N.C. Gen. Stat. § 7B-601(a); *see also* N.C. Gen. Stat. §7B-100(5).

In juvenile cases where a guardian ad litem is required, a trial court cannot properly consider all relevant criteria set out in Section 7B-1110(a) where it wholly lacks evidence from the guardian ad litem for the juveniles. *See* N.C. Gen. Stat. § 7B-1110(a). Consequently, a trial court's ruling on disposition cannot be the result of a reasoned decision absent evidence of a guardian ad litem's investigation and corresponding recommendations. *See In re T.L.H.*, 368 N.C. at 107, 772 S.E.2d at 455. Accordingly, the trial court abused its discretion by concluding termination was in the best interest of the Juveniles without hearing evidence from the Guardian ad Litem. *See id.* at 107, 772 S.E.2d at 455; N.C. Gen. Stat. § 7B-1110.

Rather than issuing a ruling under these circumstances, the trial court should have terminated the hearing, instructed the Guardian ad Litem to perform its duties, and set a later hearing date providing sufficient time for the Guardian ad Litem to investigate and develop best interest recommendations. *See In re R.A.H.*, 171 N.C. App. at 431–32, 614 S.E.2d at 385; *see also* N.C. Gen. Stat. § 7B-601(a).

## V.    Conclusion

In sum, the trial court abused its discretion by ruling on disposition absent evidence from the Guardian ad Litem. We hold that a guardian ad litem in a termination of parental rights proceeding must offer evidence to aid the trial court's best interests determination on disposition and to provide a basis for appellate review. A valid termination of parental rights requires adherence to the statutorily-mandated procedure so the trial court is equipped to rule on the best interest of the child. Without disturbing the trial court's ruling on adjudication, we vacate the Order and remand for a new disposition hearing.

VACATED AND REMANDED FOR NEW DISPOSITION HEARING.

Judges TYSON and ARROWOOD concur.