An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-529

Filed 4 March 2026

New Hanover County, Nos. 20JT000051-640, 20JT000163-640

IN THE MATTER OF: E.J.S. AND S.C.H.S.

Appeal by respondents from order entered 18 March 2025 by Judge J.H. Corpening II in New Hanover County District Court. Heard in the Court of Appeals 11 February 2026.

>*Jane R. Thompson for petitioner-appellee New Hanover County Department of Social Services.*
>
>*Poyner Spruill LLP, by Clare W. Magee, for guardian ad litem.*
>
>*Robert W. Ewing for respondent-appellant father.*

DILLON, Chief Judge.

Respondent-Father ("Father") appeals from trial court order terminating his parental rights based on several grounds. For the reasons below, we affirm.

I. Background

This appeal arises from the trial court's termination of Father's parental rights to his children, Emily and Sally.[1]

---

[1] Pseudonyms. N.C. R. App. P. 42.

A. Underlying Juvenile Action

Father is the putative biological father of Emily born in 2019. Four months following Emily's birth, North Carolina Department of Social Services ("DSS") filed a juvenile petition alleging neglect of Emily and obtained nonsecure custody. DSS placed Emily with her maternal grandfather and step-grandmother.

In August 2020, the trial court adjudicated Emily as a neglected juvenile. The trial court ordered custody of Emily to remain with DSS and for DSS to maintain placement authority and discretion.

Father is the putative biological father of Sally born in 2020. DSS filed a petition alleging neglect of Sally when she was only three days old and obtained nonsecure custody. DSS placed Sally with her maternal grandfather and step-grandmother.

In February 2021, the trial court adjudicated Sally as a neglected juvenile. The trial court ordered custody of Sally to remain with DSS and for Emily and Sally to be placed with their biological mother and their maternal grandmother, with the maternal grandmother as the primary caregiver. During this time, Father was incarcerated.

Approximately two years later on 7 February 2023, DSS again became involved with Emily and Sally, filing a petition alleging abuse, neglect, and dependency of the juveniles due to a report of "loop mark bruising" on Emily which Father and the

mother could not explain. The trial court granted DSS nonsecure custody and the juveniles were again placed with their maternal grandfather and step-grandmother. Based on the parties' stipulations at the adjudication hearing on 14 June 2023, the trial court found Emily and Sally neglected and dependent; ordered custody of the juveniles' to remain with DSS; encouraged incarcerated Father to write letters to the juveniles; and adopted the Guardian ad Litem's ("GAL") recommendations that Father complete parenting courses, obtain a Comprehensive Clinical Assessment ("CCA"), complete a Psychological Evaluation, complete a Domestic Violence Offenders Program, submit to random drug screenings, and among other things, once released, Father shall have supervised visitation with the juveniles a minimum of two hours once a week.

In August 2023, at the initial permanency planning hearing, the trial court set the primary permanent plan for the juveniles as reunification with a parent with a concurrent plan of legal custody with a relative or other court-approved caretaker. Approximately a month later, Father was released from incarceration and thereafter subsequently arrested in March 2024.

In a March 2024 permanency planning hearing order, the court found Father failed to maintain consistent contact with DSS, failed to enter into a case plan with DSS, and it did not appear at that time that Father was engaged in any services previously recommended by the trial court to assist with reunification. The trial court additionally found Father failed to comply with any random drug screens requested

by DSS and had visited the juveniles once since his September 2023 release. In April 2024, the juveniles' mother relinquished her parental rights to Emily and Sally for the specific purpose of adoption by the maternal grandfather and step-grandmother.

In June 2024, the trial court ordered the change of the permanent plan to adoption with a concurrent plan of reunification.

### B. Termination Proceeding

Approximately five months later in November 2024, DSS filed to terminate Father's parental rights as to Emily and Sally citing neglect and failure to make reasonable progress. N.C.G.S. § 7B-1111(a)(1), (2). The trial court previously adjudicated the juveniles neglected and dependent in an underlying juvenile action. In an order dated 18 March 2025, the trial court concluded it was in Emily's and Sally's best interest to terminate Father's parental rights, and it so terminated those rights. Father appeals.

### II. Analysis

Father argues the trial court committed reversible error in concluding the termination of his parental rights to Emily and Sally is in the juveniles' best interest. Specifically, Father contends the trial court impermissibly relied on an Adverse Childhood Experiences Study ("ACES") and the trial judge's conversation with his cardiologist in terminating Father's parental rights.

A two-step process is used to determine whether parental rights should be terminated: (1) an adjudicatory stage, and (2) a dispositional stage. *In re Z.J.W.*, 376

N.C. 760, 765 (2021); *see also* N.C.G.S. §§ 7B-1109, -1110. At the adjudicatory stage, the trial court must determine whether at least one ground exists to terminate parental rights as stated in N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e).

If the trial court finds a ground to terminate parental rights under G.S. 7B-1111(a), it continues to the dispositional stage where it determines if termination of the parents' rights is in the juvenile's best interest based on the following factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a)(1)-(6).

Dispositional findings of fact are reviewed to determine whether they are supported by competent evidence. *In re K.N.K.*, 374 N.C. 50, 57 (2020). Unchallenged dispositional findings are binding on appeal. *In re Z.L.W.*, 372 N.C. 432, 437 (2019) (citations omitted). A trial court's conclusion of a juvenile's best interest at the dispositional stage is reviewed under an abuse of discretion. *In re A.R.A.*, 373 N.C. 190, 199 (2019). A trial court abuses its discretion when its "ruling is manifestly

unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107 (2015) (citation omitted).

First, we consider whether the trial court abused its discretion in terminating Father's parental rights to Emily and Sally. The trial court made dispositional findings addressing each of the factors in subsection G.S. 7B-1110(a)(1)-(6) and took judicial notice of the underlying juveniles files for Emily and Sally:

> 24. The juvenile, [Sally], is currently [ ] years . . . old. She has been in the legal custody of the Department . . . more than one-half her entire life.
>
> 27. [Lengthy recitation of Dr. Spaeth's involvement with Sally and Dr. Spaeth's recommendations and conclusions based on such].
>
> 29. The juvenile, [Emily], is currently [ ] years . . . old. She has been in the legal custody of the Department . . . more than one-half her entire life.
>
> 31. [Emily] and [Sally] have been in placement with their maternal grandfather and step-grandmother, [ ], continuously since February 8, 2023. The [grandparents] are committed to the care of the juveniles, including meeting their extraordinary needs. There is a strong bond between each juvenile and the [grandparents].
>
> 33. There is a high likelihood of adoption of each juvenile if parental rights are terminated.
>
> 34. The termination of parental rights of Respondent-Father to each juvenile will aid in accomplishing the permanent plan of adoption for each juvenile.
>
> 35. There is no significant bond between either juvenile and Respondent-Father . . . .
>
> 36. The conduct of Respondent-Father has been such as to

> demonstrate that he will not promote the juveniles' health, or physical and emotional well-being.
>
> 37. It is in the best interest of the juveniles, [Emily] and [Sally], that [ ] the parental rights of Respondent-Father to each be terminated.

Father challenges findings of fact 27 and 36 as being unsupported by competent evidence. In essence, Father contends the trial court's findings of fact 27 and 36 are solely based on the trial court's alleged consideration of ACES and a conversation with the trial judge's cardiologist and because each of those anecdotes were not in evidence at the dispositional stage, there is not competent evidence in the record to support findings of fact 27 and 36. We disagree.

Finding of fact 27 is supported by competent evidence. The termination hearing transcript reflects the trial judge's oral digression at the conclusion of the hearing regarding ACES and a conversation with his cardiologist as each related to the testimony of Dr. Spaeth, DSS's child psychology expert ("Expert"). The trial judge's digression is not reflected in written finding of fact 27. *See In re A.U.D.*, 373 N.C. 3, 9–10 (2019) ("[A] trial court's oral findings are subject to change before the final written order is entered.").

And, on review of the record, finding of fact 27 is supported by the competent evidence of Expert's hearing testimony and the received exhibit of Sally's psychological evaluation ("Evaluation"). In sum, Expert's testimony and Expert's Evaluation discussed Sally's indicators for ADHD, symptoms for "other specified

trauma and stressor related disorder" and "specified complex trauma." Thus, despite the trial judge's anecdotal digression at the conclusion of the termination hearing, the lack of written findings regarding such digression and the presence of competent evidence supporting finding of fact 27 permits this Court to conclude the finding is supported by competent evidence.

Similarly, finding of fact 36 is supported by competent evidence. First, Father's testimony at the termination hearing indicated following release from incarceration in September 2023, he did not live in a place suitable for Emily and Sally.

Second, at the termination hearing, the juveniles' foster care social worker indicated since February 2023, the juveniles' remained in the care of the maternal grandfather and step-grandmother. Following Father's release from incarceration in September 2023 until his present incarceration beginning in March 2024, Father visited Emily and Sally twice, despite having more opportunities to visit the juveniles. *See In re K.N.K*, 374 N.C. at 59 (concluding competent evidence supported the trial court's finding the respondent "will not promote [the juvenile's] physical and emotional well-being" because respondent abandoned the juvenile over a period of many years and maintained inconsistent visitations).

Third, unchallenged findings of fact 6, 7, 10–12, 14, 16–18, 21–22, 24, and 29 are similar to the uncontested adjudicatory findings in *In re B.M.S.*, 288 N.C. App. 293, 299–302 (2023), in which this Court utilized the uncontested findings in that

case to conclude the respondent-mother "has been such as to demonstrate that she will not promote the juvenile's physical or emotional well-being." *Id.* at 299.[2]

Here, the unchallenged findings of fact recited above found the following: juveniles' to be neglected within the meaning of G.S. 7B-101(15); Father's lack of compliance with (1) a case plan, (2) a CCA on mental health and substance use, (3) a Psychological Evaluation on mental health and substance use; and (4) five separate random drug screens; Father's failure to enroll in parenting education coursework[3]; Father's chronic periods of homelessness and inability to find a stable job; Father's inconsistent visits with the juveniles'; and Father's neglect and fear of repetition of neglect if the juveniles' were returned to Father.

Thus, based on the three reasons above, competent evidence supports the trial court's finding of fact regarding Father's inability to support the juveniles' well-being.

Accordingly, we hold the trial court did not abuse its discretion in concluding it is in the best interest of Emily and Sally to terminate Father's parental rights. The trial court's findings indicate its consideration of the dispositional factors in G.S. 7B-

---

[2] The adjudicatory findings of fact in *In re B.M.S.*—17, 20, 23, 29, 33, 36, 38, and 41–42—indicate the juvenile's status as neglected within the meaning of G.S. 7B-101(15); the juvenile's age, the respondent-mother's failure to complete her case plan, recommended services, mental health treatment, and substance abuse treatment; respondent-mother's inconsistent visits with the juvenile; respondent-mother's inability to provide shelter; the trial court's finding of respondent-mother's neglect and fear of repetition of neglect if the juvenile was returned to mother's care. *See In re B.M.S.*, 288 N.C. App. at 299–302. These findings are nearly identical to the uncontested findings in Father's case (see above), testimony from Father, and testimony from the juveniles' foster care social worker.

[3] The same finding does find Father successfully completed a separate parenting course "on the tablet" while incarcerated in October 2024.

1110(a), including the juveniles' bond with their maternal grandparents, the grandparents' intention and eagerness to adopt the juveniles', how termination of Father's parental rights will aid adoption, the lack of bond between the juveniles' and Father, and the court's consideration of Expert's testimony and Evaluation. Likewise, the trial court's assessment is consistent with the GAL's recommendation to terminate Father's rights.

### III.    Conclusion

For these reasons, the trial court did not abuse its discretion. We affirm the trial court's termination of Father's parental rights as to Emily and Sally.

AFFIRMED.

Judges FLOOD and FREEMAN concur.

Report per Rule 30(e).